IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

RASHEEN MINES,

        Petitioner,

    v.

UNITED STATES OF AMERICA,

        Respondent.

Civil No. 10-5163 (JBS)
[Crim. No. 06-126 (JBS)]

**OPINION**

---

APPEARANCES:

Mr. Rasheen Mines
#56248066
USP McCREARY
P.O. Box 3000
Pine Knot, KY 42635
      Petitioner Pro Se

Paul J. Fishman, United States Attorney
    By: Howard J. Wiener, Assistant U.S. Attorney
       Steven J. D'Aguanno, Assistant U.S. Attorney
OFFICE OF THE US ATTORNEY
401 Market Street, 4th Floor
Camden, NJ 08101
      Attorneys for Respondent

**SIMANDLE**, Chief District Judge:

## I. INTRODUCTION

This matter comes before the Court on Petitioner Rasheen
Mines's petition to vacate, set aside, or correct his sentence,
filed pursuant to 28 U.S.C. § 2255, on the grounds of
ineffective assistance of counsel under the Sixth Amendment of
the U.S. Constitution. [Docket Item 1.]

The Court finds that the motion, files and records of the case conclusively show that Petitioner is not entitled to relief, and therefore his § 2255 petition will be denied without a hearing.

## II. Background

This case arises from a home invasion and robbery in Erial, New Jersey, in which seven children were terrorized and which culminated in a high-speed chase that led police from New Jersey into Philadelphia, Pennsylvania. Petitioner was arrested immediately after an SUV, carrying stolen goods from the home, crashed near the intersection of Frankford Avenue and Castor Avenue in Philadelphia, and the four co-defendants attempted to flee. A jury convicted Petitioner and his co-defendants of conspiracy to violate the Hobbs Act, 18 U.S.C. §§ 1951(a), (b)(1), and (b)(3), and the Travel Act, 18 U.S.C. §§ 1952(a)(2), (a)(3)(B), (b) and (2); substantive violations of the Hobbs Act and the Travel Act; brandishing a firearm in connection with a crime of violence under 18 U.S.C. § 924(c)(1)(A)(ii) and (2); and possession of a firearm by a convicted felon, under 18 U.S.C. § 922(g)(1) and (2). (See Amended Judgment, United States v. Mines, Cr. No. 06-126-JBS-4 (D.N.J. entered May 1, 2007), ECF No. 147 at 1.) Petitioner received a prison sentence of 480 months. (Id. at 2.)

Petitioner appealed his conviction and sentence to the Third Circuit on the grounds that (1) there was insufficient evidence on the Hobbs Act counts, (2) the District Court improperly applied § 924(c), and (3) the District Court erred in admitting the pretrial and in-court identifications of him. United States v. Hernandez, 306 F. App'x 719, 721-22 (3d Cir. 2009). The Third Circuit affirmed the conviction and sentence. Id. at 723. The U.S. Supreme Court denied certiorari. Mines v. United States, 558 U.S. 905 (2009).

Petitioner, pro se, timely filed[1] this petition to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. He claims numerous incidents of ineffective assistance of counsel by his retained trial and appellate attorney, James P. Lyons, Esq., in violation of the Sixth Amendment of the U.S. Constitution. He alleges his counsel (1) failed to advise Petitioner about his sentence exposure; (2) failed to advise Petitioner about rejecting a plea offer; (3) failed to properly investigate and research legal issues and call favorable

---

[1] The U.S. Supreme Court denied certiorari on October 5, 2009. This Court received the present petition on October 7, 2010, and the petition appears to be stamped by the U.S. Post Office on October 4, 2010. The "prison mailbox rule" dictates that a habeas application is deemed filed on the date the prisoner delivers the petition to prison officials for mailing. Faines v. United States, 808 F. Supp. 2d 708, 711 n.2 (D. Del. 2011). Therefore, the petition is timely.

witnesses; (4) failed to object on double jeopardy grounds to simultaneous prosecution of the Hobbs Act and the Travel Act; (5) failed to challenge the prosecution's witnesses; (6) failed to properly object to a Bruton violation; (7) failed to properly advise Petitioner on his right to testify; (8) failed to object to the application of § 924(c) and the resulting sentence; (9) failed to object to the Presentence Report and sentencing guideline miscalculations; (10) counsel failed to raise his erroneous classification as a career offender on direct appeal; and (11) failed to present other meritorious claims on direct appeal. Petitioner requests this Court to hold an evidentiary hearing on his § 2255 claims and to vacate his conviction and sentence. He also requests the appointment of counsel to assist at his evidentiary hearing.

The government filed an answer contesting all of Petitioner's claims, and provided voluminous supporting documents, including a declaration from Mr. Lyons. [Docket Item 10; App. at 59-64.] Petitioner filed a reply [Docket Item 29], and later filed a motion to supplement his petition, which the government opposes. [Docket Items 30 & 35.]

The Court will assess each claim separately.

## III. Standard of Review

Under 28 U.S.C. § 2255(a), a federal prisoner may move to vacate, set aside or correct a sentence on the ground that the

sentence was imposed in violation of the Constitution or federal law, the sentencing court was without jurisdiction, or the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. The district court shall grant a hearing to determine the issues and make findings of fact and conclusions of law. § 2255(b). However, if the motion, files and records of the case conclusively show that the prisoner is not entitled to relief, the petition will be denied. Id.; see also United States v. McCoy, 410 F.3d 124, 131-32 (3d Cir. 2005) (holding a district court must grant an evidentiary hearing unless the record before it conclusively showed the petitioner was not entitled to relief).

Generally, an evidentiary hearing must be held to resolve issues of fact falling outside the record of the case. United States v. McCoy, 410 F.3d 124, 131 (3d Cir. 2005); United States v. Costanzo, 625 F.2d 465, 470 (3d Cir. 1980). However, a hearing need not be held if the petition raises no legally cognizable claim, or if the factual matters raised by the petition may be resolved through the district court's review of the motions and the records in the case, or, in some circumstances, if the court, in its discretion, finds the movant's claims to be too vague, conclusory or palpably incredible. Costanzo, 625 F.2d at 470 (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). Government affidavits

filed in opposition to a petition for § 2255 relief are not part of the files and records of the case and are not conclusive against the petitioner. Id.

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that (1) counsel's performance was so deficient as to deprive him of the representation guaranteed to him under the Sixth Amendment of the U.S. Constitution, and (2) the deficient performance prejudiced the defense by depriving the defendant of a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984). To show prejudice under Strickland, Petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Rainey v. Varner, 603 F.3d 189, 197-98 (3d Cir. 2010) (quoting Strickland, 466 U.S. at 694).

## IV. Discussion

### A. Failure to advise about sentence exposure

Petitioner claims that his counsel did not inform him about the possibility of consecutive terms of imprisonment, his status as a career offender and other provisions of the sentencing guidelines and resulting sentence exposure if he went to trial and were found guilty. (Pet. at 3-4.) He suggests that, had he received more "information, advice and knowledge . . . there is a reasonable probability that Movant would have pled guilty,

avoided a jury trial, and received a sentence" of less than 40 years. (Id. at 4.) The government responds that the record conclusively shows that Petitioner knew about his possible sentence exposure and therefore cannot show prejudice under Strickland. (Resp't Opp'n at 11-12.)

The record shows that in the initial appearance upon the criminal Complaint on February 8, 2006, Judge Rosen, then a U.S. Magistrate Judge, summarized the charges against Petitioner during a hearing, and asked the prosecutor, Mr. D'Aguanno, to state the maximum penalties associated with each count. (App. at 72-75.) Mr. D'Aguanno stated that the statutory maximum for a violation of § 924(c) "is life in prison." (Id. at 74-75.) Judge Rosen asked Petitioner, who was present in the courtroom, "Did you hear and understand that, sir?" Petitioner replied: "Yes, sir." (Id. at 75.)

A similar interaction occurred on March 1, 2006, before this Court. (App. at 77-82.) Mr. D'Aguanno summarized the maximum penalties of each charge, including life in prison for the § 924(c) violation. (Id. at 78-80.) The Court asked Petitioner: "did you hear the Assistant United States Attorney state the maximum penalties that are provided by law in the event of conviction on these various counts?" Petitioner responded: "Yeah, I heard him." (Id. at 82.)

Finally, at another proceeding before this Court, on June 13, 2006, Mr. D'Aguanno once again summarized the possible sentence exposure stemming from the Superseding Indictment, including life in prison for the § 924(c) count, in the Petitioner's presence. (Id. at 88-89.)

The record therefore conclusively shows that Petitioner was aware of the possible risks of being found guilty at trial: life in prison.[2] Because Petitioner knew of this possibility, he will be unable to show prejudice from counsel's alleged ineffective assistance under Strickland, and no evidentiary hearing will be held on this claim.

**B. Failure to advise about an open plea**

Relatedly, Petitioner asserts that his counsel never informed him that he could receive a reduction in his Base Offense Level by pleading guilty and accepting responsibility without cooperating with authorities. (Pet. at 3-4.) In his affidavit, Petitioner states that Mr. Lyons "never informed me

---

[2] Mr. Lyons states in his declaration that he informed Petitioner that he faced "a possible sentence of approximately 36 years to life in prison if convicted and that the Court could impose consecutive sentences to reach such a sentence." (Lyons Declaration [App. at 60] ¶ 5.) Mr. Lyons stated that following the arraignment, he again informed Petitioner about the possibility of a life sentence. (Id.) This declaration is consistent with and adds additional support for the record, which shows Petitioner was aware of his sentence exposure from the first day of the case and separately thereafter.

about being able to plead guilty and receive credit for acceptance of responsibility, or assist me with further negotiations for a plea agreement without cooperation requirement." (Mines Aff. ¶ 3.) Petitioner contends that "there is a reasonable probability" that he would have pleaded guilty and received a lighter sentence if he was aware of the possibility of pleading without cooperating with the government. (Pet. at 4.)

The government responds that Mr. Lyons informed Petitioner about the possibility of pleading guilty, including that he could plead guilty without cooperating with the government. (Resp't Opp'n at 14-15; see also Lyons Decl. ¶¶ 5, 7 [App. at 60-62] (declaring that counsel informed Petitioner of attending a proffer session and the possibility of pleading guilty without cooperating and that Petitioner had no interest in either option; and stating that the government never tendered a formal plea offer).)

The government also argues that no plea offer was extended to counsel "because there was never any indication from Movant (or from any of the defendants), either directly or through counsel, that he was interested in pleading guilty." (Resp't Opp'n at 16.) The government contends that, without a formal plea offer, Petitioner cannot show prejudice because he cannot show that he would have received a lesser sentence. (Id. at 17-

19.) The government acknowledges that Mr. Lyons described in his declaration engaging in "preliminary plea negotiations" with the prosecution, but the government emphasizes that Petitioner stated he did not wish to plead guilty because of the possible sentencing exposure of 27 years in prison. (Id. at 18, citing Lyons Decl. ¶ 7.)

The government also acknowledges that the prosecutor extended to the defendants the opportunity to participate in a proffer with law enforcement. (Id. at 15 n.11, citing App. at 118-121.) Mr. D'Aguanno stated on the record that each defendant was given the opportunity to come in and sit down and proffer.[3] (Id.) Mr. D'Aguanno stated that the offer to come in and proffer was communicated to attorneys orally but never put in writing. (App. at 119-120.)

The Third Circuit has held that, in certain circumstances, a habeas petitioner states a plausible claim for ineffective assistance of counsel when he asserts that his counsel failed to

---

[3] At a hearing, Mr. D'Aguanno stated: "I simply want to protect the record, Judge so that at some point down the road one of these defendants, after being convicted possibly and receiving a 30 to life sentence, is going to come back and indicate that he did not know that he had the opportunity to proffer with the government. . . . I simply want to put it on the record . . . so down the road in the context of some post-conviction issue like a 2255, there's a record to point to so that they can say they were . . . aware of that . . . ." (App. at 119.)

advise of the possibility of entering an open plea, which would have reduced his sentence. United States v. Booth, 432 F.3d 542, 549 (3d Cir. 2005). In Booth, defendant Booth rejected a plea offer from the government and countered with a different offer. Id. at 544. The government declined the counteroffer and informed Booth's counsel that it would only allow Booth to plea if he "would give a proffer concerning his own culpability and the criminal involvement of any other participants" in the crime. Id. Because Booth did not want to cooperate against any of the other defendants, negotiations broke down, he proceeded to trial, and he was sentenced to 90 months in prison. Id. After exhausting his appeals, Booth filed a § 2255 petition, alleging his counsel was ineffective, because he was not informed about all possible plea options, including an "open plea," which would not have required Booth to cooperate with the government. Id. at 543. The district court denied the motion without holding a hearing, but the Third Circuit reversed, concluding that "a defendant has the right to make a reasonably informed decision whether to accept a plea offer" and that Booth raised a sufficient allegation that he would have accepted an "open plea" and was entitled to an evidentiary hearing on the merits. Id. at 545, 549. The Third Circuit stated: "We must accept that Booth would have truthfully admitted the conduct comprising counts one and two and any additional relevant conduct" and the court found

that Booth likely would have received a reduction in sentence for accepting responsibility. Id. at 548-49. The Third Circuit ordered the district court to hold an evidentiary hearing on the question. Id. at 550.

The Third Circuit declined to extend Booth in United States v. Gonzalez-Rivera, 217 Fed. Appx. 166 (3d Cir. 2007). In that case, the Third Circuit affirmed the district court's denial of a § 2255 petition for an evidentiary hearing. The petitioner Gonzalez-Rivera argued that his counsel was ineffective for failing to pursue a plea agreement. Id. at 168. The Third Circuit disagreed, distinguishing Booth because the petitioner in Gonzalez-Rivera had maintained his innocence throughout the proceedings and was unwilling to plead guilty, unlike Booth, who had engaged in plea negotiations. Id. at 170. The Third Circuit found that Gonzalez-Rivera's "contention that he would have accepted a guilty plea is belied by the evidence below" and that, because Gonzalez-Rivera was unable to point to "any specific benefit that he would have received for his plea" the "alleged prejudice that he may have suffered as a result is far too speculative." Id. The court also noted that Gonzalez-Rivera's counsel actually had informed him of the option to plead guilty without cooperation, unlike Booth's counsel, who did not. Id.

District courts in this Circuit have followed <u>Gonzalez-Rivera</u> and denied evidentiary hearings when (1) the petitioner claimed his or her attorney never informed him or her about an open plea, (2) the petitioner maintained his or her innocence throughout the proceedings, and (3) the record belied the contention that the petitioner would have accepted a plea deal. <u>See</u> <u>Donna v. United States</u>, No. 10-1607, 2011 WL 322636, at *7-*8 (D.N.J. Jan. 31, 2011); <u>Darby v. United States</u>, No. 10-1437, 2010 WL 4387511, at *6-*7 (D.N.J. Oct. 28, 2010); <u>United States v. Jackson</u>, No. 09-5255, 2010 WL 1688543, at *4 (E.D. Pa. Apr. 27, 2010).

This case is similarly distinguishable from <u>Booth</u> -- and analogous to <u>Gonzalez-Rivera</u>, <u>Donna</u>, <u>Darby</u>, and <u>Jackson</u> -- because Petitioner here did not engage in plea negotiations with the government. He did not receive a formal plea offer and counter with his own, only to be told he must proffer to plead guilty. There is nothing in the record of this case to indicate that Petitioner would have accepted a plea deal. Such an assertion, which would lead to the conclusion that Petitioner suffered prejudice under <u>Strickland</u>, is "far too speculative" given the record in this case. <u>Gonzalez-Rivera</u>, 217 F. App'x at

170; Darby, 2010 WL 4387511, at *6; Jackson, 2010 WL 1688543, at *4.[4]

Petitioner maintained his innocence throughout the trial, belying the contention that he would have accepted a deal. Mr. D'Aguanno stated on the record that the government had extended the offer to discuss a proffer with the government, and none of the defendants accepted that offer. (App. at 118-121.) Additionally, although Petitioner never testified at trial, he did speak at his sentencing, and had this exchange with the Court:

> THE DEFENDANT: . . . I would like to say that throughout this trial I maintained my innocence and as I stand here today, I do also. Now, I sat through three weeks of this trial, and I understand what happened to them [the victims] was indeed a nasty crime. . . . I would like to say that, you know, it was a terrible act. I still maintain my innocence and, you know, I understand what they went through.
> THE COURT: But you weren't there?
> THE DEFENDANT: No, sir.

(App. at 637). Petitioner reiterates this point in this petition. He writes: "Movant is actually and factually innocent of the criminal allegations in this case." (Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in

---

[4] Mr. Lyons's declaration adds that Petitioner was informed about the possibility of pleading guilty without cooperating. (Lyons Decl. ¶ 5.) Although this declaration is not conclusive against Petitioner, it does further distinguish Petitioner from Booth and align Petitioner more closely with Gonzalez-Rivera.

Fed. Custody [Docket Item 1] at 8.) He adds: "Movant wants the record to reflect that he has maintained his innocence and was misidentified." (Id.)

Petitioner's affidavit, submitted with this petition, sets forth an alibi explaining his presence in the area where he was arrested. (Mines Aff. ¶ 8.) He suggests that if he had been able to testify on his own behalf, he would have told the jury he was in the area to bring gifts to his cousin. (Id.; see also Donna, 2011 WL 322636, at *7 n.4 (denying to hold an evidentiary hearing, in part, because "Petitioner's claim that she would have accepted a plea deal is also contradicted by her concurrent claim that her testimony would have persuaded a jury to acquit her").) Petitioner adds: "I did not commit the crimes that I was charged with and did not know anything about them." (Mines Aff. ¶ 8.) He also argues that "had I been provided with effective assistance of counsel who told me about the possibility of being convicted, I would have most probably pled guilty to avoid the substantial sentence received after a jury trial." (Id.)

Petitioner's assertions that he "most probably" would have pleaded guilty, even if he were innocent, as he continues to claim, is belied by the rest of the record. Even now Petitioner has not argued that he would have pleaded guilty, if he had more information about open pleas; rather, he states he thinks it is reasonably likely he would have taken the plea. See Darby, 2010

15

WL 4387511, at *6 (faulting the petitioner for "not even argu[ing] that he would have accepted an open plea, but rather, assert[ing] that he 'might have considered' the option"). Petitioner here falls short of showing that "he would be entitled to an additional decrease for accepting his responsibility in spite of his continued claims of innocence." Id.

The record, particularly Petitioner's own words and conduct at trial and sentencing, and his continued assertions in this motion, simply do not demonstrate that Petitioner would have accepted a plea offer. Because Mr. Lyons's alleged failure to inform his client about an open plea would not have resulted in prejudice to the Petitioner, the Court will not hold an evidentiary hearing on this claim.

The present record presents nothing more than regret at not having entered a plea of guilty in a case where an open plea would have necessarily militated toward a very lengthy sentence in any event, which this Petitioner showed no inclination to accept.

### C. Failure to investigate and research issues, and failure to call favorable witnesses

Petitioner asserts he has an innocuous explanation for being near the site of the SUV crash on the night in question but that his counsel refused to investigate or interview

individuals who could corroborate Plaintiff's story. (Pet. at 5-
6.) Petitioner claims he was bringing gifts in three Toys-R-Us
bags to his cousin, Andrea. (Id. at 10; Mines Aff. ¶¶ 4, 8.) The
case against Petitioner consisted of identifications by the
victims and testimony of a police officer, who said that he
watched Petitioner exit the SUV and never lost sight of him
before apprehending him. (Pet. at 5-6.) Petitioner contends
there is no objectively reasonable rationale for counsel's
failure to pursue this line of defense, in the absence of DNA
evidence, citing Wiggins v. Smith, 539 U.S. 510 (2003).

Relatedly, Petitioner argues that his counsel was
ineffective for not calling favorable alibi witnesses to
testify, such as his cousin who "knew that Movant once lived at
the West Moreland Street area . . . and often visited and hung-
out in the neighborhood." (Pet. at 10.) Petitioner's cousin and
other neighborhood residents, whose names Petitioner says he
relayed to counsel, could have testified that Petitioner was
"known to frequent that exact spot." (Id. at 11.)

The government responds that counsel's rationale for not
pursuing Petitioner's alibi is that Petitioner admitted his
guilt to counsel, and counsel believed that the Rules of
Professional Conduct would prevent him from offering any alibi
witnesses to give testimony inconsistent with Petitioner's

admission of guilt.[5] (Resp't Opp'n at 20-21, citing Lyons Decl.
¶¶ 6, 8.) The government contends that even if counsel had
interviewed witnesses, "he could not have utilized the results
of his investigation," because of these ethical constraints and
his duties to the Court and the opposing party and counsel. (Id.
at 23.) Because the outcome of the case would not have been
different had counsel pursued Petitioner's alibi, the government
argues Petitioner cannot show prejudice under Strickland. (Id.)

The government's affidavits cannot be conclusive against
Petitioner. Costanzo, 625 F.2d at 470; Johnson v. United States,
No. 10-2984, 2013 WL 1007242, at *2 (D.N.J. Mar. 12, 2013);
United States v. Santiago, No. 04-3886, 2007 WL 518589, *8 (E.D.
Pa. Feb. 9, 2007). Therefore, the government may not use Mr.
Lyons's declaration as conclusive proof that counsel acted
reasonably in deciding not to pursue a possible line of defense
for Petitioner.

However, the Court agrees with the government that
Petitioner suffered no prejudice by counsel's decision not to
investigate because the evidence against Petitioner was so
substantial. Four victims positively identified Petitioner in
photo arrays and in Court. (App. at 145 (Tr. 91:19-92:3), 169

---

[5] The government cites RPC 3.4, which states: "A lawyer
shall not: . . . (b) . . . counsel or assist a witness to
testify falsely . . . ."

(Tr. 185:16-186:22), 175-75 (Tr. 232:21-234:18), 196 (Tr.
318:13-319:11), 210 (Tr. 376:14-19), 240 (Tr. 520:8-521:4), 244
(Tr. 534:25-535:11).) Officer Johnson testified that he saw
Petitioner exit the SUV after the crash, and that he caught
Petitioner "in about five seconds" and never lost sight of him.
(App. 279-282 (Tr. 677:3-678:8, 688:23-689:2).) A safe belonging
one of the victims was recovered from the SUV. (App. 323-24 (Tr.
881:18-883:3).) Additional evidence suggested that Petitioner
knew two of his co-defendants. (App. 378 (Tr. 1126:21-1127:1127,
1301:7-10).)

The testimony with which Petitioner would counter this
evidence is testimony from a relative and other neighborhood
residents that Petitioner "was often known to frequent that
exact spot" (Pet. at 11) and "to explain why Movant was at the
location but not involved with the illegal activities committed
by the occupants of the SUV suspect vehicle." (Pet. at 6.) There
is not a reasonable probability that the outcome of the trial
would have been different with this testimony, given the
evidence already in the record. Testimony that Petitioner
frequented that area regularly is not exonerating and not
necessarily inconsistent with him returning to that spot with
the co-defendants in the SUV; in the minds of jurors, it would
probably explain why the SUV ended up in that very neighborhood.
Testimony that Petitioner was bringing Toys-R-Us bags to his

cousin that night, thus explaining his presence in the area, would not be particularly persuasive coming from a relative and if the bags were not recovered at the time of Petitioner's arrest. Petitioner does not point to evidence in the record that Toys-R-Us bags were recovered at the time of Petitioner's arrest, nor is the Court aware of such evidence.

Therefore, the testimony proposed by Petitioner does not undermine the Court's confidence in the outcome, and therefore, the Court finds that counsel's alleged ineffective assistance did not result in prejudice under Strickland, 466 U.S. at 694. Accord Millhouse v. United States, 09-1951, 2012 WL 3549988, at *6 (E.D. Pa. Aug. 16, 2012) (denying a § 2255 petition without a hearing because Petitioner could not show prejudice from any alleged constitutional violations, as "evidence of Petitioner's guilt was overwhelming"); DeMarco v. United States, No. 07-4249, 2009 WL 689630, *16-*17 (D.N.J. Mar. 9, 2009) (stating that a verdict only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support, stating that the evidence in this case was "substantial," and holding that petitioner could not show that prejudice resulted from not offering additional testimony in his defense); Cusumano v. McFarland, No. 04-5080, 2006 WL 1455785, at *9 (D.N.J. May 18, 2006) (denying a § 2254 petition under Strickland because additional testimony petitioner proposed in

20

his defense did not undermine confidence in the outcome of the trial, given the "strong" evidence against him). No evidentiary hearing will be held on this claim.

### D. Failure to raise a pretrial __Blockburger__ double-jeopardy objection

Petitioner suggests that he was a victim of double jeopardy, as defined by Blockburger v. United States, 284 U.S. 299 (1932), because the government relied on his interstate travel to earn convictions under both the Hobbs Act and the Travel Act. (Pet. at 7.) Petitioner suggests his counsel was ineffective for not raising this point in a pretrial motion. (Pet. at 7-8.)

As the government correctly points out (Resp't Opp'n at 24), Petitioner misapprehends the concept of double jeopardy. Blockburger holds that the test to determine if conduct constitutes two offenses is whether each statutory provision requires proof of an element that the other does not. 284 U.S. at 304. In this case, the Hobbs Act does not require proving interstate travel whereas the Travel Act does. Compare 18 U.S.C. § 1951(a) (no interstate travel requirement) with 18 U.S.C. § 1952(a) (requiring proof of "travel[] in interstate or foreign commerce"). The Hobbs Act, furthermore, requires proof of an agreement to violate the Hobbs Act, whereas the Travel Act conspiracy requires proof of an overt act in furtherance of the

conspiracy. <u>See</u> <u>Johnson v. United States</u>, No. 10-2984, 2013 WL 1007242, at *4 (D.N.J. Mar. 12, 2013); <u>Hernandez v. United States</u>, No. 10-4943, 2013 WL 5331055, at *8 (D.N.J. Sept. 23, 2013). Simultaneous prosecution under these two statutes thus does not implicate <u>Blockburger</u>. Although the prosecution used Petitioner's interstate travel to satisfy the effect-on-commerce element of the Hobbs Act, that choice does not render Petitioner's conviction vulnerable to a double jeopardy defense. Therefore, the prosecution properly pursued convictions under both statutes, and counsel was not ineffective for failing to raise a legally baseless double-jeopardy objection. An evidentiary hearing need not be held on this claim.

### E. Failure to challenge the prosecution's witnesses and evidence

Petitioner contends that witnesses for the prosecution made prior inconsistent statements that went unchallenged by his counsel. (Pet. at 9.) He claims that Sarita Agront misidentified co-defendant Johnson and that "counsel failed to properly challenge Ms. Agront's identification" of Petitioner. (<u>Id.</u>) Additionally, he faults his counsel for failing "to procure any of Officer Johnson's police reports and/or notes prepared in relation to the SUV crash and Johnson's foot chase . . . ." (<u>Id.</u> at 9-10.) Petitioner concludes that "counsel's failure to effectively challenge the prosecution's testimonial evidence

against Movant caused prejudice to Movant's criminal proceedings and denied Movant a fair trial." (Id. at 10.)

The government responds that Petitioner "never explains what counsel could have unearthed during his questioning of witnesses that could have helped him, and therefore he is utterly unable to demonstrate prejudice . . . ." (Resp't Opp'n at 25.) The government contends that Ms. Agront's "identification of codefendant Johnson had nothing to do with her independent positive identifications of Movant" and that Petitioner does not suggest any specific way in which counsel could have attacked Ms. Agront's lack of truthfulness or any other witness's alleged inconsistencies. (Id. at 25-26.) Regarding Johnson's reports, the government asserts that none existed: "Johnson did not write any reports." (Id. at 26-27.) The government suggests that counsel could not have improved his cross-examination of the prosecution's witnesses. (Id. at 27.)

The Court agrees with the government that Petitioner has not suggested any strategy or tactic that counsel could have employed that would have bolstered his case and which probably would have had an effect on the outcome of the proceeding. The specific testimony that Petitioner wishes his counsel had challenged had little or no bearing on Petitioner's own conviction, and generalized grievances about more effective cross-examination cannot be grounds for an evidentiary hearing.

23

See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000)

("vague and conclusory allegations contained in a § 2255

petition may be disposed of without further investigation by the

District Court"). Moreover, impeachment of these witnesses would

not have undermined the rest of the substantial evidence against

Petitioner. Counsel was not ineffective here, and no evidentiary

hearing will be held on this issue.

**F. Failing to object to an alleged Bruton violation**

Petitioner argues that he was unfairly prejudiced by a

Bruton[6] violation, and while his counsel "did make a late Bruton-

type objection related to the government's closing arguments,"

"counsel's objection and argument fell short of properly arguing

and preserving the issues for appellate review." (Pet. at 11.)

In this case, recordings of post-arrest telephone calls placed

by the defendants were introduced by the government. The

prosecution used the recordings to establish that the co-

defendants knew each other and to rebut the contention that the

defendants had been randomly arrested on the streets of

Philadelphia.

---

[6] Bruton v. United States, 391, U.S. 123 (1968). The Bruton
principle is that "a defendant is deprived of his Sixth
Amendment right of confrontation when the facially incriminating
confession of a nontestifying codefendant is introduced at their
joint trial, even if the jury is instructed to consider the
confession only against the defendant." Richardson v. Marsh, 481
U.S. 200, 207 (1987).

The government urges the Court not to consider Petitioner's claim because it is "not developed." (Resp't Opp'n at 28.) The government observes that Petitioner does not explain how the evidence presented unfairly prejudiced him or how his attorney's objection fell short of arguing and preserving the issue for appellate review. (Id. at 29.) On the merits, the government suggests that the Court properly gave the jury a limiting instruction about the tape-recorded evidence, and the Third Circuit affirmed that no Bruton violation occurred. (Id. at 30-31.)

Counsel was not ineffective for making his Bruton objection as he did. Indeed, the Third Circuit held, as to co-defendant Johnson, that the Court "did not err in admitting the telephone calls because the government used the statements attributed to Brown, Johnson and Mines . . . only to rebut their claims that they did not previously know each other and were randomly arrested in Philadelphia that night." Hernandez, 306 F. App'x at 722 (citing Tennessee v. Street, 471 U.S. 409 (1985), for the proposition that an out-of-court statement that a co-conspirator used to impeach the defendant's testimony, rather than to prove the matter asserted, did not violate Confrontation Clause). The same is true as to Petitioner. The phone calls are neither clearly inculpatory nor powerfully incriminating and do not directly implicate Petitioner in any crime. As no Bruton

violation occurred in this case, counsel was not deficient for not challenging the evidence in another fashion, and certainly no prejudice resulted from counsel's actions or inactions on this point. No evidentiary hearing will be held on this claim.

**G. Failure to advise Petitioner about his right to testify**

Petitioner claims he wanted to testify on his own behalf but that counsel was adamantly opposed to the idea. (Pet. at 12.) He asserts that counsel promised Petitioner that he could "get the defense's story into the record via examination of witnesses and closing arguments." (Id.) Counsel also led Petitioner to believe that taking the stand "would result in a longer prison sentence for obstruction of justice if Movant was convicted -- even though Movant would tell the truth on the stand." (Id.) Petitioner states that counsel "exploited" his ambivalence about testifying by saying that his co-defendants' cases would be jeopardized by his testimony. (Id.) Petitioner concludes that, had counsel "not provided deficient legal advi[c]e," he would have testified and the outcome of the proceedings "most probably [would] have changed." (Id. at 13.)

The government points out that Petitioner stated in a colloquy that the decision not to testify was his own, and thus, his contention that his attorney pressured him to testify is not credible. (Resp't Opp'n at 32-33.)

26

The record indicates that Petitioner was informed of his right to testify and the decision to remain silent was his own:

> THE COURT: Do you understand you have a right to testify at this time in this case, and if you wish to testify, then you would get on the witness stand and offer to the jury the testimony you would like them to consider about your case?
> DEFENDANT MINES: I understand.
> . . .
> THE COURT: Have you discussed these rights with your attorney?
> DEFENDANT MINES: Yeah, we talked about it.
> THE COURT: And have you made a decision about whether to testify or not testify?
> DEFENDANT MINES: No, I'm not going to testify.
> THE COURT: And is it your own personal decision not to testify?
> DEFENDANT MINES: Yes.
> THE COURT: Do you have any questions of me about your rights?
> DEFENDANT MINES: Uh-uh. [indicating "no"]

(App. at 515 (Tr. 1769:10-1770:5).) Thus, the contemporaneous statements of Petitioner indicated that he personally decided not to testify.

The government also asserts that because Petitioner admitted his guilt to counsel, counsel could not have questioned Petitioner on the stand without assisting Petitioner to commit perjury. (Id. at 33.) Moreover, the government argues that Petitioner could have been cross-examined about his prior convictions, if he took the stand, which would have been damaging. (Id. at 33-34.) The government argues that counsel was not ineffective and Petitioner cannot show prejudice. (Id. at 34.)

27

Again, Mr. Lyons's declaration, in which he justifies his trial strategy on the basis of Petitioner's admission of guilt, cannot be conclusive against Petitioner, because it is not contained in the record of the case. However, the Court again agrees with the government that Petitioner did not suffer prejudice by not testifying. Evidence of Petitioner's past felonies likely would have been admitted into evidence had Petitioner testified, and as this Court stated during the sentencing phase of this case, "one cannot help be struck by the similarity between the burglary and terroristic crimes for which [Petitioner] was sentenced in 1999 and the present offense." (App. at 624 (Tr. 18:1-3).) This criminal history evidence would have been particularly damaging to Petitioner's defense. Even assuming, _arguendo_, Petitioner's allegations are true and counsel's performance was deficient, Petitioner has not satisfied the prejudice requirement of Strickland related to his decision not to testify.

Having determined that Petitioner did not suffer prejudice, no evidentiary hearing will be held on this issue.

**H. Failure to object to the application of § 924(c)**

Petitioner maintains that the 18 U.S.C. § 924(c) charge should have carried a five-year sentence, not a 10-year sentence. (Pet. at 13.) He claims his counsel was ineffective for not objecting to the erroneous application of § 924(c) and

28

to the jury instructions on that count. (Id.) The government

responds that the § 924(c) count was handled properly and

Petitioner was properly sentenced. (Resp't Opp'n at 35–36.)

Section 924(c) states, in relevant part:

> any person who, during and in relation to any crime of
> violence . . . for which the person may be prosecuted
> in a court of the United States, uses or carries a
> firearm, . . . shall, in addition to the punishment
> provided for such crime of violence . . . if the
> firearm is brandished, be sentenced to a term of
> imprisonment of not less than 7 years[.]

§ 924(c)(1)(A)(ii). Evidence in the record suggests that at

least one of the defendants brandished a firearm during the home

invasion and robbery.[7] (App. at 168-69 (Tr. 183:19-184:11,

186:23-187:13).)

A reasonable jury could conclude from the evidence in the

record that either Petitioner brandished a firearm during the

crime of violence or had knowledge of a co-defendant brandishing

a firearm. Therefore, a sentence of no less than seven years was

permissible under the statute.

The Court instructed the jury on § 924(c) at length,

describing the three elements of the crime: (1) "that the

---

[7] Witness Brian McMorrow testified that Petitioner was the
man who had the firearm during the crime (App. 169 (Tr. 185:11-
186:22).), but Third Circuit case law also permits liability
under § 924(c) on an aiding and abetting theory, if a defendant
knew of a co-defendant's brandishing of a firearm during the
crime of violence. United States v. Price, 76 F.3d 526, 529-30
(3d Cir. 1996).

defendants used or carried one or both of the firearms specified in that count," (2) "the defendants did so during and in relation to at least one of the specified crimes of violence," and (3) "the defendants did so knowingly and willfully." (App. at 533 (Tr. 1839:1-5); see generally App. at 532-34 (Tr. 1837:17-1845:11) (instructing the jury).) The Court has reviewed the instructions relayed to the jury and finds no error in the explanation of the statute's elements.

Therefore, the Court is satisfied that Petitioner was properly convicted of the § 924(c) count and that the sentence was consistent with the statute. Petitioner's counsel was not ineffective for failing to object to the lawful application of the statute. No evidentiary hearing will be held on this claim.

## I. Failure to object to an improper calculation and classification related to sentencing

Petitioner identifies two problems with his sentencing: (1) that his Base Offense Level ("BOL") in the presentence report ("PSR") was determined in error, resulting in an improper sentencing range, and (2) he was improperly classified as a career offender. (Pet. at 14-15.) Petitioner claims that his counsel was ineffective for failing to properly object to these errors. (Id.)

### i. Base Offense Level sentencing range

Petitioner argues that his Base Offense Level ("BOL") in the presentence report ("PSR") was determined in error. (Id. at 14.) "Instead of using the instant offenses of conviction as required to establish the statutory maximum sentence, the PSR used the statutory maximum related to Count Five (use/carrying firearm under 18 U.S.C. § 924[c]) which is Life." (Id.) Petitioner argues that the PSR cannot use firearms offenses in determining the statutory maximum for career offender status, and instead should have used the statutory maximum applicable to the Hobbs Act and Travel Act charges. (Id. at 14-15.) Petitioner asserts this would have resulted in a BOL of 32 and a sentencing range of 210-262 months, not 360 months to life. (Id. at 15.) Petitioner alleges counsel was ineffective for not objecting to this error. [Id.]

The government correctly asserts that the PSR actually determined Petitioner's Total Offense Level was 32 and properly set the sentencing range at 30 years to life. (Resp't Opp'n at 39; see also App. at 642-43 (Tr. 12:19-13:1).) The government therefore argues that Petitioner suffered no prejudice from counsel's failure to object to the finding in the PSR. (Id. at 40.)

Section 2K2.4(c) of the U.S. Sentencing Guidelines Manual provides: "If the defendant (1) was convicted of violating section 924(c) . . .; and (2) as a result of that conviction

31

(alone or in addition to another offense of conviction), is determined to be a career offender under §4B1.1 (Career Offender), the guideline sentence shall be determined under § 4B1.1(c)." Petitioner was convicted of violating § 924(c), and therefore the guideline sentence is determined under § 4B1.1(c), if Petitioner is a career offender under § 4B1.1.

Section 4B1.1(c)(2) provides that:

> In the case of multiple counts of conviction in which at least one of the counts is a conviction other than a conviction for 18 U.S.C. § 924(c) . . . , the guideline range shall be the greater of--
> (A) the guideline range that results by adding the mandatory minimum consecutive penalty required by the 18 U.S.C. § 924(c) . . . count(s) to the minimum and the maximum of the otherwise applicable guideline range determined for the count(s) of conviction other than the 18 U.S.C. § 924(c) . . . count(s); and
> (B) the guideline range determined using the table in subsection (c)(3).

U.S.S.G. § 4B1.1(c). Section 4B1.1(c)(3), referenced above, provides the "Career Offender Table for 18 U.S.C. § 924(c) or § 924(a) Offenders."

The greater guideline range, when comparing § 4B1.1(c)(2)(A) and (B), is 360 months to life, under subsection (B).[8] Thus, the Court determined the proper sentencing range using U.S.S.G. § 4B1.1(c)(2), if Petitioner was properly

---

[8] Defendant was not eligible for a reduction under § 3E1.1.

classified as a "career offender," under § 2K2.4(c) and § 4B1.1.
The Court now turns to that question.

### ii. Career offender classification

Petitioner asserts that his classification as a career
offender under § 4B1.1 was improper because the Court based its
determination on convictions for burglary and terroristic
threats and manufacturing and delivering drugs. (Pet. at 15.)
Petitioner argues that these two prior convictions "do not
qualify as 'crimes of violence' or 'controlled substance'
conviction [sic] as mandated under U.S.S.G. § 4B1.1." (Id.)

The government responds that this claim is undeveloped and
should be disregarded. (Resp't Opp'n at 40.) In a footnote, the
government argues that Petitioner's prior convictions qualify
him as a career offender under the guidelines. (Id. at 40 n.34.)

The Court finds no error in classifying Petitioner as a
career offender. Burglary of a dwelling is a crime of violence.
U.S.S.G. § 4B1.2(a)(2). Manufacturing and delivering cocaine is
a controlled substance offense. U.S.S.G. § 4B1.2(b). Sentences
for both of these prior convictions, in 1999 and 1998,
respectively, were imposed within ten years of the instant
offense. (See U.S.S.G. § 4A1.2(e)(1)-(2) (defining the
"Applicable Time Period").) Petitioner challenges no other
errors in the Court's classification of him as a career

33

offender, and the Court can identify none. Therefore, the Court did not err in qualifying Petitioner as a career offender. Petitioner's counsel was not ineffective for failing to raise this baseless objection.

This finding also dispenses with Petitioner's separate claim that appellate counsel was ineffective for failing to appeal the Court's "Erroneous Classification of [Petitioner] As A Career Offender." (Pet. at 16.) Having found the career offender classification proper, appellate counsel was not ineffective for failing to appeal that issue.

Because the Court finds no errors in Petitioner's sentencing, Petitioner's counsel was not ineffective for failing to make objections. An evidentiary hearing need not be held on these claims.

## J. Appellate counsel failed to brief and present "meritorious issues"

Without explanation, Petitioner alleges that "Appellate Counsel Failed To Brief And Present To The Third Circuit Court Of Appeals Meritorious Issues Properly Preserved During Pre-Trial And Trial Proceedings." (Pet. at 16.) In a footnote he explains: "This would include, but not be limited to, the objections made by counsel related to Movant's sentence, the arguments preserved in counsel's sentencing memorandum, and arguments made at Movant's sentencing hearing." (Id. at 16 n.4.)

This allegation is "too vague to warrant further investigation in a court." <u>United States v. Dawson</u>, 587 F.2d 923, 928 (3d Cir. 1988). <u>See also</u> <u>Thomas</u>, 221 F.3d at 437 ("vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court"). An evidentiary hearing on this claim will be denied.[9]

**K. Petitioner's motion to supplement his § 2255 petition**

---

[9] Appellate counsel would not have been ineffective for raising any of the issues Petitioner sets forth in this petition, as the Court has determined all are without merit. The government suggests that the only issue Petitioner's counsel failed to raise, that wasn't raised here or on direct appeal, was that the Court over-represented Petitioner's criminal history in the sentencing memorandum and at sentencing. (Resp't Opp'n at 42.) The government suggests, however, that this argument is without merit. (<u>Id.</u>) The government contends, and the Court agrees, that "the Court's rejection of the downward departure motion was quite reasonable under all the circumstances." (<u>Id.</u>) At any rate, a district court's exercise of discretion in denying a request for a downward departure is not reviewable on appeal. <u>United States v. Powell</u>, 269 F.3d 175, 179 (3d Cir. 2001). The Third Circuit may review the Court's rejection of <u>Booker</u> variance for an abuse of discretion. <u>United States v. Tomko</u>, 562 F.3d 558, 564 (3d Cir. 2009) (en banc).

The Court thoroughly considered Petitioner's criminal history (App. 623-26) and found that, absent career offender status, he "would be in Category V with 11 points" which is "not a big leap or technical leap or unfair leap" to career offender. (App. at 626 (Tr. 20:4-7).) The "career offender designation does not overstate either the seriousness of his record or the likelihood of his committing further crimes." (App. at 626 (Tr. 20:11-14).) The Third Circuit could not find that the Court abused its discretion in this case, so Petitioner's counsel was not ineffective for failing to raise this issue on appeal.

Petitioner filed a motion on October 3, 2013, to supplement his § 2255 petition, arguing that his trial counsel was ineffective for failing to move for acquittal on the grounds that the government "never established a connection between the victims and interstate commerce" under the Hobbs Act. [Docket Item 30 at 7.] Petitioner argues that counsel's performance "fell below an objective standard of reasonableness, because it was clearly no strategic choice in not making sure that the jury was informed" of different requirements for individuals and businesses for purposes of the interstate commerce element. [Id. at 8.]

The government objects on two grounds. First, because this claim was not included in his original § 2255 petition, the Court should not consider it. [Docket Item 35 at 2.] Indeed, the Court issued a Miller notice and order advising Petitioner that, if he failed to respond to the Miller notice, his pleading would be ruled upon as filed and new claims would not be considered unless certain specific and rare circumstances existed. [Docket Item 2.] Petitioner did not respond. Because Petitioner knew that his pleading would be deemed complete and because Petitioner has offered no explanation for the delay in filing his motion to supplement his petition, the motion will be denied.

Second, as an alternative ground, the government rightly observes that Petitioner raised this issue on direct appeal, and it was rejected by the Third Circuit.[10] The Third Circuit ruled that "the evidence would allow a rational trier of fact to find the required de minimis effect on interstate commerce." Hernandez, 306 F. App'x at 721-22. Because the position Petitioner now advances is without legal merit, Petitioner's trial counsel was not ineffective for not making the challenges Petitioner suggests. For this reason, too, Petitioner's motion is denied.

## V. Conclusion

Petitioner's motion to vacate, alter or amend his sentence pursuant to 28 U.S.C. § 2255 is denied without an evidentiary hearing. Petitioner's motion to supplement his § 2255 petition is denied. An accompanying Order will be entered.

## VI. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c)(1)(B), "[u]nless a circuit justice or judge issues a certificate of appealability, an

---

[10] The government argues that Petitioner's co-defendant raised this issue on appeal. In fact, Petitioner advanced the same argument on his own behalf on direct appeal. He argued that the Hobbs Act conviction should be reversed due to insufficient evidence that the robbery had a substantial impact on interstate commerce. In addition, Petitioner attempted to move for a rehearing en banc before the U.S. Court of Appeals for the Third Circuit to reconsider the interstate commerce jurisprudence. See Petition for Panel with Suggestion for En Banc Rehearing, Mines v. United States, No. 07-2335 (3d Cir. filed Mar. 4, 2009).

appeal may not be taken to the court of appeals from the final order in a proceeding under section 2255." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy that standard, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, jurists of reason could not disagree with the Court's resolution of Petitioner's constitutional claims. Under the standard recited above, the Court will deny a certificate of appealability.

| **November 26, 2013** | **s/ Jerome B. Simandle** |
| Date | Jerome B. Simandle |
| | Chief U.S. District Judge |